## WATSON v. ROYAL INDEMNITY CO.

District Court, S. D. Alabama.

Feb. 29, 1932.

Pillans, Cowley & Gresham and R. T. Ervin Jr., all of Mobile, Ala., for plaintiff.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, Ala., for defendant.

ERVIN, District Judge.

This is a suit by Watson against the Royal Indemnity Company under the following facts:

The company issued an indemnity policy to the Hertz Drivurself Company and its subsidiaries. During the life of said policy, an automobile was leased by said company to one Cooper, who, while driving said car, negligently injured plaintiff, who sued said Cooper in the state court and recovered judgment against him. The defendant in this suit was not made a party to such suit.

Plaintiff sued out a writ of fieri facias on said judgment, which was returned "no property found."

Plaintiff alleges that Cooper is insolvent. It is also alleged that the policy sued on covers Cooper's liability, and agrees, in the event of his insolvency, and execution is returned unsatisfied on a judgment obtained against him, an action might be brought under such policy to recover the amount of such judgment. The pleas filed set up a number of the quoted provisions and aver a failure of Cooper and the Hertz Company and plaintiff to conform to the provisions so set out. Demurrers filed to the pleas raise the question that the duties or contract obligations so set up are imposed on the Hertz Companies or the renters or drivers of cars rented from the Hertz Companies in the event they are sued or sought to be held liable for damages, and are not imposed on the injured person, or plaintiff in any such accident. This calls for an analysis of the provisions of the policy, which are as follows:

"Statement No. 1:

"Insured: Hertz Drivurself Corporation, a Delaware corporation, Hertz Drivurself Sales Corporation, an Illinois corporation, Hertz Drivurself System, Inc., a Delaware corporation, and all subsidiary and or associated corporations (now existing or hereinafter organized during the period of this policy) of each and or all of the foregoing corporations, (all of the foregoing being hereinafter sometimes referred to as 'named insured'), and any person, firm or corporation licensed by the named insured, of any of them, to use the Hertz Drivurself System in the conduct of the business or renting automobiles without chauffeurs to others (hereinafter sometimes referred to as 'licensees'), and any person, firm or corporation to whom an automobile has been rented without a chauffeur (hereinafter referred to as the 'renter'), and any employee or employees of

said person, firm or corporation (hereinafter referred to as the 'driver'), and any employer of said 'renter' and or 'driver.'

"In consideration of the premium specified in, and the statements contained in, the Schedule of Statements endorsed hereon, made part hereof, and warranted by the Insured to be true, the Royal Indemnity Company (hereinafter called 'the company') hereby agrees with the Insured named in Statement 1, that if, during the term mentioned in Statement 13, any person or persons shall sustain bodily injuries by accident, whether resulting fatally or otherwise, or any property (except property of the Insured or in the charge, possession, custody or control of the Insured or its employees, or carried in or upon the automobiles insured hereunder) shall be accidently injured or destroyed by reason of the ownership, maintenance or use of any of the automobiles described in Statement 5 of the said Schedule, at any location within the United States of America or the Dominion of Canada, for which bodily injuries and or injury or destruction of property the Insured and or others, as hereinafter provided, are liable for damage.

"Then the company will pay, within the limits specified in Statement 12, the loss (including consequential loss of use of property injured or destroyed) arising out of such liability of the named Insured, and or any person while riding in or legally operating any of the automobiles described in the Schedule of Statements, and or any person, firm or corporation legally responsible for the operation thereof, provided such riding, use or operation is with the permission of the named Insured, or, if the named Insured is an individual, with the permission of an adult member (other than a chauffeur or domestic servant) of his household; it being agreed, however, that this Policy shall not apply as respects injury or destruction or loss of use of property, unless a premium is specified under heading 'P. D.' in Statement 5:

"And will in addition, in the name and on behalf of the named Insured and or any person, firm or corporation as above defined, 1. Defend all claims or suits for damages for such bodily injuries and or injury, destruction and or loss of use of property for which damages they are or are alleged to be liable. 2. (a) Pay all costs and expenses incurred with the Company's consent. (b) Pay all taxed costs. (c) Pay all interest accruing before and after entry of judgment until the Company has paid, tendered or deposited in Court such part of such judgment as does not exceed the limit of the Company's liability thereon. 3. Repay the expense incurred in providing such immediate surgical relief as is imperative at the time of the accident.

"Provided always that the Insurance hereby made is and shall be subject to the Conditions hereinafter set forth and to the memoranda, if any, endorsed hereon in like manner as if the same were respectively repeated and incorporated herein, and compliance with such Conditions and memoranda, and each of them, shall be a condition precedent to the right of recovery hereunder.

"Condition No. 4:

"Upon the occurrence of any accident claimed to be covered by this policy, the renter or driver shall give immediate notice to the licensee from which such automobile was rented, and immediately thereafter such licensee shall give written notice to the company at its home office, 150 William Street, New York City, New York, or to an authorized agent of the company within the state wherein such accident occurred, with the fullest information possessed by such licensee at the time, and each insured shall forward to the company or agent who countersigned this policy forthwith upon receipt thereof, every process, pleading and paper of any kind relating to any and all claims, suits and proceedings received by it or him, respectively.

"Condition No. 7:

"The violation of any provision, term, covenant or condition of this policy by any licensee or by the renter or driver, or employer of the renter or driver, shall not release, diminish or affect the liability of the company hereunder as to any of the named insured. The violation of any provision, term, covenant or condition of this policy by any renter or driver, or any employer of a renter or driver, shall not release, diminish or affect the liability of the company hereunder as to the licensee. This policy shall be cancelled by either the named insured or the company giving to the other sixty days notice in writing of its election to cancel. Said notice may be given personally or may be given by United States registered mail."

The policy also contains the following provisions:

"It is further understood and agreed that the said policy shall not cover the renter or driver unless full information regarding any accident is given to a representative of the operator at the station of the operator from which the automobile was rented within

twenty-four hours after the occurrence of such accident."

"In the event of a claim or suit covered by this policy the Insured shall in no manner aid or abet the claimant but shall cooperate fully with the company in defense of the said claim or suit."

"It is understood and agreed that the said policy shall not apply unless a Hertz Drivurself System standard rental agreement is issued at or before the time the automobile leaves the station."

"It is further understood and agreed that the said policy shall not apply unless a copy of rental agreement stub is mailed to Hertz Drivurself System, Inc., at 333 South Franklin Street, Chicago, Illinois, by noon of the day following completion of trip for which said rental agreement was issued."

"It is further understood and agreed that the said policy shall not cover liability of any person, firm, or corporation other than insured named in statement 1 of the schedule of statements of said policy and clause (A) above in respect of injuries caused in whole or in part by any automobile while being operated, maintained or used: * * *

"5. In violation of any of the terms, conditions, limitations and agreements of the rental agreement."

"Every accident must be immediately reported in writing to the station from which the car is rented and in any event within twenty-four hours. The driver and renter must fully cooperate with the insurance company and the station from which the automobile is rented in all matters connected with the investigation and defense of any claim or suit."

Condition No. 8:

"In the event of the bankruptcy or insolvency of any of the insured, the company shall not be relieved of the payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency. If, because of such bankruptcy or insolvency an execution against any of the insured is returned unsatisfied in an action brought by the injured or his or her personal representative in case death results from the accident, then an action may be maintained by the injured person or his or her personal representative against the company under the terms of this policy for the amount of judgment in said action, not exceeding the amount of the policy."

It will be observed that practically all these are conditions subsequent, providing for the forfeiture by failing to do something after the infliction of the injury.

We find first the policy covers the various Hertz Companies and such persons as rent cars from them, who are denominated "named insured," "licensees," "renters" and "drivers," and an "employer" of the renter or driver. Certainly, the injured person is not any one of these, so his claim for compensation against the defendant is not one for indemnity because some one is trying to hold him liable on a claim that defendant should defend or pay.

The provisions that "the renter or driver shall give immediate notice to the licensee" imposes no obligation on the plaintiff.

So the provision "the violation of any provision, term, covenant or condition of this policy by any licensee or by the renter or driver, or employer of the renter or driver shall not release," etc., does not apply to the plaintiff. He is not within these terms, nor had he made any covenant with the defendant.

The provision the "policy shall not cover the renter or driver unless full information regarding any accident," etc., cannot refer to any duty or obligation of the plaintiff.

So the provision that the "insured shall in no manner aid or abet the claimant" cannot refer to plaintiff, but to some one who is defendant in a suit. Certainly, the provisions requiring the issuance and forwarding of a rental agreement apply only to the local Hertz Company whose duty it is to perform those duties. So, again, the provision exempting the company from liability where the rented car was used in violation of the terms and conditions imposed by the rental agreement can apply only to the user of the car and not to the person injured. So, again, the provisions requiring the reporting to the station of the accident and co-operation in the investigation of the accident can refer only to the driver or employer of the driver at the time of the accident.

I find nothing in the policy which requires the plaintiff or injured person to make any report or to do anything to preserve his rights, he is the person whose claim is contemplated as being opposed or resisted by the company and all operators or users of the car, whose duty it is to aid in the investigation for the purpose of defeating his claim.

The complaint is drawn under the last-quoted provision of the policy providing that the insolvency of any one of the insured should not release the company, but that, if an injured person obtains a judgment

against an insured person, and execution is returned unsatisfied, an action may be maintained by the injured person against the company "under the terms of this policy" for the amount of the policy.

The complaint alleges such judgment, and return of execution. What, then, is the meaning of the words "under the terms of this policy"? We have seen that certain duties are imposed by it on the various persons who are insured.

Certainly, these duties or obligations are intended to require such insured persons to do these stated things or to lose their right to require defendant to defend the suit or to pay such judgment as may be rendered against them, but, certainly, it is not intended to defeat the right of an injured person to hold defendant to its contract because the injured person fails to perform a duty imposed upon such other by the policy. To make assurance doubly sure on this point, see condition 7 quoted from the policy. Even in the absence of such a stipulation only a failure by one charged with a duty, to perform such duty, would forfeit his rights. The various persons insured may be presumed to know the terms of the policy, but surely a person injured by one of such insured persons would not even know that there was a policy covering or protecting such insured, much less be informed of its terms, so as to charge him with the duty of seeing that the person whose negligence injured him performed the duties imposed upon such person by the policy

Assuming, however, that he was informed of the fact of a policy and of its terms, how can the injured person enforce performance by the insured of his duty to the company?

The injured person and the insured are hostile parties. The injured person is claiming damages directly of the insured, and only contingently of the company. The insured is trying to save his own skin.

Can the injured plaintiff say to the insured defendant, "You must give notice to the Hertz Company of the injury and see that they forward such notice to the insurance companies, and you must forward a copy of my complaint to such insurance company and co-operate with them in investigating the accident and your liability, and you must aid them in defending this suit"? Suppose he does all this and the insured fails or refuses to do it, can the injured person mandamus him to compel such performance? Suppose the injured person should forward a copy of the complaint to the company, this would not be a compliance by the insured with the terms of the policy.

Suppose, again, the injured person demand performance by the insured, how is he to know or be informed of or prove performance by the insured?

The law does not require the doing of a vain or futile thing. If, then, it would be vain or futile for the injured person to request or demand performance by the insured of the duties imposed upon him in order to protect his own rights, then certainly the failure of such insured person should not be held to forfeit such rights as are granted by the policy to the injured person. Again, suppose the insured is insolvent, he knows nothing can be made out of him, so he is perfectly indifferent, he has no interest or inclination to perform his duties in order to protect such judgment as the injured person may recover. Suppose, in addition to being insolvent, he has some little pique against the injured person. He can willfully fail and refuse to perform the duties required of him and so defeat the claim of the injured person. What sane man could or would look to his adversary to protect or preserve his rights in a litigation? Has it ever been done in any case since the world began. . Can we then so construe the words "under the terms of this policy" as requiring performance by the negligent driver of the duties required of him to protect his own rights, in order to preserve the rights of the injured person?

Let us examine condition 8. If this contract was one of indemnity against loss or damage, an insured, in order to recover against the company, would have to aver and prove payment of the claim of the injured person, so his bankruptcy or insolvency might be said in a way to release the company, but that is not the case here. It is a policy of indemnity against obligation, so in no event could the bankruptcy or insolvency of the insured release the company. It is only "such indemnity as would have been payable but for such bankruptcy or insolvency" that is referred to in the first sentence. What indemnity does the bankruptcy or insolvency relieve the company of? None on a policy such as this, for should the insured be declared a bankrupt the trustee would have to defend the suit against the insured and the company would have to pay such judgment as is recovered, whether the trustee has paid such judgment or not.

I find no indemnity the company is relieved of by the bankruptcy or insolvency of an insured.

So I construe this sentence as saying in effect that the injured person shall not suffer from the bankruptcy or insolvency of an insured, for that certainly is the intent indicated by it.

But assuming the bankruptcy or insolvency did release the claim of the insured against the company, the company agrees not to claim such release on that ground.

Why then, should the company claim a release on grounds of failure of the insured to do other things?

Condition 8 as written in this policy is the only place where any reference is made to the duty or obligation of the injured, and, as I construe this policy, when the injured has done what is there set out, he has a right to sue the company to recover the amount of such judgment as he may have recovered against any one of the insured.

This condition as written certainly presupposes that the company was not a party to such suit and was not defending it. It says: "Then an action may be maintained by the injured person or his or her personal representative against the company under the terms of this policy for the amount of judgment in said action, not exceeding the amount of the policy."

As the company was not a party to the action, it seems to me it has not agreed to the right of recovery, but has a right to litigate the question in the present case, but apparently concedes that, if the plaintiff establishes such right, the recovery shall be the amount of the judgment, just as in a suit or a note. The expression used is "an action may be maintained," not that an action may be brought or instituted.

The language is, not that the company will pay such sum, but that a "suit may be maintained" for such sum.

Hence, the company may litigate in such suit the right of the injured person to recover, but not as to the amount of such recovery.

Again, as the injured person is bound by the amount of such judgment and cannot sue for more than that sum, so the company should also be bound by it if the injured person establishes the right to recover against the insured. So when the injured person has sued an insured, and prosecuted such suit to judgment, and had execution issued in a suit against the company, he is suing the company strictly "under the terms of this policy."

But for such terms he could not sue the company, and then, on no other terms.

The meaning of the paragraph as I read it is that no one who has a valid claim for injury against an insured shall lose by reason of the insolvency of such insured, but, when he prosecutes such claim to judgment and proves the insolvency by an execution returned "no property found," he may maintain a suit against the company for the amount of the judgment. Neither the bankruptcy nor the insolvency of the insured could release the company if it was bound to the injured person or to the insured, but, if such injured person would lose the fruits of his judgment by reason of the bankruptcy or insolvency of the insured, then the company undertakes to pay such claim.

Again, as the injured person is bound by the amount of such judgment, and cannot sue for more, then the company is also bound by it on that question.

So, when the injured person has sued one of those insured and prosecuted such suit to judgment, and had execution issued and returned "no property found," and alleges that the insured is insolvent and sues the company for the amount of such judgment, he is suing the defendant "under the terms of the policy," there being no other terms imposed on him by such policy, and but for the terms of this paragraph no such action could be maintained.

I am aware of the fact that there are authorities on both sides of the construction I place on the words "under the terms of the policy." I agree with Metropolitan Casualty Ins. Co. v. Albritton, 214 Ky. 16, 282 S. W. 187, and Finkelberg v. Continental Casualty Co., 126 Wash. 543, 219 P. 12, 13. An examination of the opposed cases will show that some of the cases were in equity, and most of them went off on a supposed intent of certain statutes, instead of the meaning of words found voluntarily placed in a written contract. Some of them on the proposition that the contract was one of indemnity against loss or damage, and not indemnity against obligation.

Without undertaking to discuss any of them in detail I have stated the reasons which caused me to reach my conclusion.

The demurrers to the pleas will therefore be sustained.